UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00161-GNS

BENNY G. WHITE,
Individually and as Administrator of the
Estate of Alexis Paige Coker                                           PLAINTIFF

v.

SCOTTY'S CONTRACTING & STONE, LLC, et al.                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motion to Dismiss by ACF Global Logistics, LLC ("ACF Global") (DN 5), Plaintiff's Motion to Remand (DN 10), and Motion for Leave to Amend by ACF Global (DN 14). The motions are ripe for adjudication. For the reasons stated below, the motion to remand is **GRANTED**, and the other motions are **DENIED AS MOOT**.

### I.     STATEMENT OF CLAIMS

On April 5, 2021, Alexis Paige Coker ("Coker") was killed an automobile accident on Interstate 65 in Bowling Green, Kentucky. (Compl. ¶¶ 6, 24-30, DN 1-1). At the time of the accident, it is alleged that Defendant Scotty's Contracting & Stone, LLC ("Scotty's Contracting") was performing overnight asphalt pavement and roadway rehab work on Interstate 65, which included lane closures. (Compl. ¶¶ 7-10). Scotty's Contracting allegedly failed to place barrels to mark the lane closure, provide warning signage in advance of the construction zone, and have a law enforcement presence to warn motorists. (Compl. ¶ 11). A semi-tractor trailer operated by a driver employed by Defendant JoshBell Trucking and Logistics, LLC ("JoshBell Trucking"), which was transporting a load dispatched through ACF Global, collided with the vehicle in which Coker was a passenger. (Compl. ¶¶ 15, 23-27).

Following his appointment as the administrator of Coker's estate, Plaintiff Benny G. White ("White") filed a lawsuit in Warren Circuit Court (Kentucky), asserting state law claims against Defendants for negligence, negligence *per se*, vicarious liability, and conspiracy. (Compl. ¶¶ 36-97). ACF Global unilaterally removed the matter to this Court on the bases that this case presented a substantial federal question and that White's claims against it were preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501. (Notice Removal 3-7, DN 1).

ACF Global then moved to dismiss White's claims as being completely preempted by the FAAAA. (Def.'s Mot. Dismiss, DN 5). White moved to remand this matter to state court. (Pl.'s Mot. Remand, DN 10). ACF Global later moved for leave to amend the Notice of Removal to address its unilateral removal to this Court. (Def.'s Mot. Leave Amend, DN 14). The motions are ripe for decision.

## II.  DISCUSSION

### A.  Plaintiff's Motion to Remand

White contends this matter was improperly removed from state court and moves to remand. (Pl.'s Mem. Supp. Mot. Remand 4-10, DN 10-1). As the removing party, ACF Global bears the burden of establishing this Court's subject matter jurisdiction over this dispute. *See Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000) (citing *Her Majesty the Queen in Right of the Province of Ont. v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989)); *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Federal courts strictly construe removal jurisdiction and any resolve any doubt of jurisdiction in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 108-09 (1941); *City of Detroit*, 874 F.2d at 339.

Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal court "for the district and division embracing the place where such action is pending" if the action could have originally been filed in federal court. 28 U.S.C. § 1441(a). Thus, for an action to be eligible for removal, it must meet the requirements for either federal question jurisdiction or diversity of citizenship jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (discussing jurisdiction under 28 U.S.C. §§ 1331-1332).

The well-pleaded complaint rule generally applies in determining jurisdictional issues. *See Lee v. Kirkpatrick*, No. 1:16-CV-00123-GNS, 2016 WL 7197478, at *2 (W.D. Ky. Dec. 9, 2016) ("Familiar to this analysis is the well-pleaded complaint rule, which directs courts to examine the '[w]ell pleaded allegations of the complaint and ignore potential defenses' in determining whether a claim arises under federal law." (alteration in original) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)). This rule is based on the premise that "the plaintiff [is] the master of the complaint." *Milby v. Liberty Life Assurance Co. of Bos.*, 102 F. Supp. 3d 922, 927 (W.D. Ky. 2015) (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994)). "'[T]he existence of a federal defense normally does not create' federal-question jurisdiction, and 'a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under" federal law.'" *Minton v. Paducah & Louisville Rys., Inc.*, 423 F. Supp. 3d 375, 379 (W.D. Ky. 2019) (second alteration in original) (internal citation omitted) (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004)).

The Complaint in the instant case asserts state law causes of action against Defendants relating to Coker's death, so there is no federal question upon which this Court has jurisdiction.

(Compl. ¶¶ 36-97). Likewise, there is no diversity of citizenship because both Plaintiff and Scotty's Contracting are citizens of Kentucky. (Compl. ¶¶ 1-2).

### 1. *Substantial-Federal-Question Doctrine*

White and ACF Global dispute whether the substantial-federal-question doctrine provides a basis for this Court's subject matter jurisdiction and the removal to federal court. (Pl.'s Mem. Supp. Mot. Remand 8-9; Def.'s Resp. Pl.'s Mot. Remand 11-21). Under this doctrine, federal jurisdiction exists when "a state-law claim necessarily state[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mf'g*, 545 U.S. 308, 309 (2005). "[T]he federal interest in providing a forum for an issue [must be] weighed against the risk that the federal courts will be unduly burdened by a rush of state law cases." *Mikulski*, 501 F.3d at 565. As the Supreme Court has explained, this doctrine applies "where the vindication of a right under state law necessarily turn[s] on some construction of federal law . . . ." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983).

The Supreme Court has cautioned that this doctrine applies to only a "special and small category" of cases. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citation omitted). For the substantial-federal-question doctrine to confer jurisdiction, the following elements must be met: "(1) [t]he state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568 (citing *Grable & Sons Metal Prods.*, 545 U.S. at 313).

### i.   Disputed Federal Issue

The first element is whether there is a disputed federal issue. *See id*. As the Sixth Circuit has noted, "there is no federal question jurisdiction when the complaint on its face states alternate theories supporting a state-law claim, at least one of which does not involve a federal question." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 760 (6th Cir. 2000) (discussing *Christian v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)).

ACF Global relies upon the references to federal law in the Complaint in maintaining that a disputed federal issue is present in this case. (Def.'s Resp. Pl.'s Mot. Remand 12-15). It is more noteworthy that the Complaint asserts causes of action based upon state law theories against ACF Global. In particular, White claims that ACF Global is liable under Sections 411, 428, and 876 of the Restatement (Second) of Torts. (Compl. ¶¶ 89-91). He further alleges:

> ACF GLOBAL [] violated state regulations, including but not limited to KRS § 189.224, which was promulgated to protect the safety of a class of people that includes ALEXIS COKER, deceased, and constitutes negligence *per se* pursuant to KRS § 446.070 and Kentucky case law, for which it is directly liable.

(Compl. ¶ 95).

Construed as a whole, the Complaint states alternate theories to support White's negligence claims, none of which are based on federal law. White's reliance upon federal law as one basis for an element of his negligence claims is insufficient to satisfy this first element. *See Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) ("That some standards of care used in tort litigation come from federal law does not make the tort claim one 'arising under' federal law." (citations omitted)); *Valdez ex rel. Miller Energy Res., Inc. v. Miller*, No. 3:11-CV-462, 2012 WL 397814, at *10 (E.D. Tenn. Jan. 20, 2012) ("Even considering the allegations of failure to comply with SEC reporting requirements, the Court finds that, at most, federal laws are

merely implicated in this case and their interpretation is not at issue or likely to be problematic. Accordingly, the Court finds that the Defendants have failed to demonstrate the first part of the substantial-federal-question doctrine, and therefore, the substantial-federal-question doctrine does not prevent remand in this case.").

Accordingly, this element does not support the exercise of federal jurisdiction, and it is apparent that White's "right to relief [does not] necessarily depend[] on resolution of a substantial question of federal law." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008) (quoting *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990)); *see also Long*, 201 F.3d at 761; *Scaccia v. Lemmie*, 236 F. Supp. 2d 830, 837 (S.D. Ohio 2002).

### ii. Substantial Federal Interest at Issue

The second element is whether there is a substantial federal interest at issue in White's claims. *See Mikulski*, 501 F.3d at 568. In determining whether the second element has been satisfied, the Supreme Court has outlined four factors to consider:

> (1) whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Id*. at 570 (citation omitted). While these factors must be examined collectively and in light of the facts presented by each case, "no single factor is dispositive." *Id*.

### a. Federal Agency Involvement

The first factor, which "is both objective and apparent," requires the Court to consider whether this case implicates a federal agency and its compliance with a federal law at issue. *See Mikulski*, 501 F.3d at 570 (citation omitted). In particular, ACF Global asserts that White's claims implicate an administrative determination by the Federal Motor Carrier Safety

6

Administration ("FMCSA"). (Def.'s Resp. Pl.'s Mot. Remand 12). ACF Global contends the FMCSA's determination that JoshBell Trucking was "fit for the job" of transporting property in interstate commerce is necessarily challenged by White's assertion that ACF Global was negligent in selecting JoshBell Trucking for the shipment at issue in this case. (Def.'s Resp. Pl.'s Mot. Remand 16).

The Court rejects the assertion that the FMCSA's administrative determination that JoshBell Trucking was "fit for the job" is necessarily intertwined with White's negligence claims. In making that determination, the FMCSA determined JoshBell Trucking satisfied the legal requirements supporting its decision at the time of review. The fact that the FMCSA had not rescinded that determination prior to the accident does not render White's negligence claims as an attack on the FMCSA's prior administrative determination. *Cf. Billings v. VIA Info. Tools, Inc.*, No. 07-CV-13392, 2007 WL 9757579, at *7 (E.D. Mich. Sept. 26, 2007) (noting "the state proceeding in *Grable* 'amounted to a collateral attack on a federal agency's action.'" (quoting *Bennett*, 484 F.3d at 909)). Otherwise, all negligence cases involving interstate trucking would be filed in federal court.[1] Accordingly, this factor does not support a finding of a substantial federal interest in this case.

---

[1] As the Supreme Court noted in *Grable & Sons Metal Products*:

> "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts. Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," [the Court in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986),] thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said

b.     **Important Federal Question**

Under the second factor, the Court must consider whether the federal question as issue is important and not merely trivial. *See Mikulski*, 501 F.3d at 570 (citation omitted). As the Sixth Circuit has noted, "[this] second factor is far more subjective . . . ." *Id.* (citation omitted).

In support of this factor weighing towards existence of a federal question, ACF Global makes similar arguments as to the first factor. (Def.'s Resp. Pl.'s Mot. Remand 15-16). It notes that the federal questions posted by White's claims "touch on the most important function [the] [FMCSA] performs—licensing carriers and regulating safety." (Def.'s Resp. Pl.'s Mot. Remand 16).

ACF Global's assertion that it could not have acted negligently when it selected JoshBell Trucking, because it was a federal-licensed motor carrier with operational authority, is a potential defense to the merits of White's claims. As the quoted passage from *Grable & Sons Metal Products* explains, ACF Global's assertion would lead to a shift in litigation involving negligence *per se* claims premised upon violations of federal law being filed in federal court. *See Grable & Sons Metal Prods.*, 545 U.S. at 318-19. As noted above, the Complaint also asserts state law theories in support the negligence claims. Thus, ACF Global's assertion that a substantial federal question is presented in this case is untenable, and this factor does not support exercising federal jurisdiction here.

---

to [create] a rebuttable presumption [of negligence] . . . under state law." In this situation, no welcome mat meant keep out.

*Grable & Sons Metal Prods.*, 545 U.S. at 318-19 (second and third alterations in original) (internal footnote omitted) (internal citations omitted).

### c.     Whether Federal Issue Will Resolve Case

The Court must also consider whether resolution of any federal issue is integral to the outcome of White's claims.  *See Mikulski*, 501 F.3d at 570 (citation omitted).  ACF Global contends:

> Given the number of federally-licensed freight brokers and motor carriers operating in America and the importance of their role in interstate commerce, the primary federal question presented by Plaintiff's "negligent brokering" claim— i.e., whether brokers have a duty to do more than simply verify a carrier's operational authority prior to selecting it to transport property—"ought to be" resolved in a federal forum so as to ensure the uniformity of its answer.

(Def.'s Resp. Pl.'s Mot. Remand 17 (citations omitted)).  It asserts that a uniform standard of care is necessary to avoid "'[s]tate by state' decisions about the validity and sufficiency of the FMCSA's regulations and the standard of care applicable to a broker's selection of an authorized carrier . . . ."  (Def.'s Resp. Pl.'s Mot. Remand 17 (citations omitted)).

Notwithstanding ACF Global's policy arguments, this is not a federal case and does not involve a challenge of the FMCSA's administrative determination to license JoshBell Trucking.  Instead, White asserts only state law claims.  *See Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 712-13 (6th Cir. 2012) ("Hampton's claim is a garden-variety state tort claim:  she alleges that RJC violated federal statutes and regulations and thus was presumptively negligent under Kentucky law.  Finding a state-law negligence claim removable on the sole basis that the violation of a federal statute creates a presumption of negligence under state law would 'flout, or at least undermine, congressional intent,' and would 'herald[] a potentially enormous shift of traditionally state cases into federal courts.'  That we will not do." (alteration in original) (internal citations omitted)).  White has asserted negligence claims premised upon state law theories, and the resolution of any federal theory for the negligence claims would not dispose of this case.  Thus, this factor is not met.

### d. Impact on Numerous Other Cases

The final factor is whether a decision on the federal question "will control numerous other cases . . . ." *Mikulski*, 501 F.3d at 570 (citation omitted). ACF Global points to the potentially widespread impact of this case on federally-licensed freight brokers and motor carriers operating in interstate commerce. (Def.'s Resp. Pl.'s Mot. Remand 17). This again miscasts the issues framed in the Complaint—whether ACF Global is liable under some theory of negligence, vicarious liability, or conspiracy in dispatching JoshBell Trucking to transport property in this instance where the driver of that load caused a fatal accident.

The mere fact that motor carriers are operating in interstate commerce everyday in the United States does not warrants the exercise of federal jurisdiction in *this* case. Again, "[i]f federal courts were to exercise jurisdiction every time federal regulations were mentioned in a state-law tort case, there would be "[a] potentially enormous shift of traditionally state cases into federal courts." *Lee*, 2016 WL 7197478, at *5 (quoting *Grable & Sons Metal Prods.*, 545 U.S. at 318); *see also Tackett v. Equitrans, Ltd.*, No. 22-18-DLB, 2022 WL 1157998, at *4 (E.D. Ky. Apr. 19, 2022) ("[T]he alleged federal issue in this matter is more of a question of whether Defendants did or did not adhere to a certain standard in their alleged negligence. Therefore, 'it is hard to imagine how the resolution of any federal issue in this case would control numerous other cases.'" (citation omitted)).

Taken as a whole, these factors do not support a finding that there is a substantial federal issue in this case. Thus, the second element does not support the application of the substantial-federal-question doctrine.

### iii. Balance of Federal and State Judicial Responsibilities

The final element for the substantial-federal-question doctrine is whether exercising subject matter jurisdiction in this instance would disrupt the balance Congress has approved between federal and state courts. *See Mikulski*, 501 F.3d at 568. ACF Global argues that this Court should exercise jurisdiction over the negligent brokering claim because Congress created a private right of action under 49 U.S.C. § 14707 for injured parties to sue *unregistered* carriers who caused accidents transporting property in interstate commerce. (Def.'s Resp. Pl.'s Mot. Remand 18 (citing 49 U.S.C. § 14707)). In relevant part, the statute provides that "[i]f a person provides transportation by motor vehicle or service in clear violation of section 13901-13904 or 13906, a person injured by the transportation or service may bring a civil action to enforce any such section." 49 U.S.C. § 14707(a).

While Section 14707 may provide a federal cause of action relating an unregistered carrier,[2] the face of the Complaint contains no such claim. Rather, all of White's claims are based on state law.

ACF Global also asserts:

> The upshot is that Congress wants federal courts to decide issues related to motor carrier registration requirements, such as whether a particular carrier is properly "registered" with the FMCSA and the related issue of whether the registration and licensing requirements enacted and approved by Congress and the FMCSA are valid and sufficient to ensure carrier safety.

(Def.'s Resp. Pl.'s Mot. Remand 18). This argument again presupposes White's claims challenge the FCMSA's administrative determination to register JoshBell Trucking, which they

---

[2] While ACF Global contends that Section 14707 would completely preempt White's negligent brokering claim, it cites no case law interpreting the statute to completely preempt state law claims. (Def.'s Resp. Pl.'s Mot. Remand 22-24).

do not. *See Milby*, 102 F. Supp. 3d at 927 ("[T]he plaintiff [is] the master of the complaint." (citation omitted)).

For these reasons, the substantial-federal-question doctrine does not apply. Because any doubts as to jurisdiction are to be resolved in favor of remand, the motion to remand will be granted on this basis. *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (citation omitted); *see also MacManus v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:08-CV-96, 2008 WL 2115733, at *9 (E.D. Tenn. May 19, 2008) ("Combining the general presumption that a cause of action lies outside of the federal courts jurisdiction, with the fact that federal jurisdiction should be invoked via the 'substantial federal question' doctrine only under 'exceptional' circumstances, the Court concludes that remand is warranted." (internal citation omitted)); *Nappier v. Snyder*, No. 1:16-CV-636, 2017 WL 1190549, at *7 (W.D. Mich. Mar. 31, 2017) ("In short, the state-law claim at issue in this case is a 'garden-variety' state-law tort claim that does not raise a federal question at the level of importance of that raised in *Grable*." (citation omitted)).

### 2. *Complete Preemption*

In its Notice of Removal and in opposing White's motion, ACF Global nevertheless contends that this matter was properly removed because his state law claims against ACF Global were "expressly and completely preempted by the FAAAA. (Notice Removal ¶ 12; Def.'s Resp. Pl.'s Mot. Remand 21-25). Assuming that assertion were true, removal would be appropriate, as the Supreme Court has explained regarding complete preemption:

> [I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

> There does exist, however, an "independent corollary" to the well-pleaded complaint rule known as the "complete pre-emption" doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Caterpillar Inc. v. William*, 482 U.S. 386, 393 (1987) (internal footnote omitted) (internal citations omitted). The Sixth Circuit has cautioned, however:

> Complete preemption arises in the rare circumstance where Congress legislates an entire field of law. When Congress does so, federal law completely overrides all state law on the topic. Given that dramatic altering of the traditional federal-state balance, we are reluctant to find such broad-based preemption. The statute in question must reflect clear congressional intent to do so. And its language must contain "extraordinary preemptive power." In other words, the statute must engulf an entire area of state law, transforming a state-law complaint into one that essentially states a federal claim.

*Miller v. Bruenger*, 949 F.3d 986, 994-95 (6th Cir. 2020) (internal citations omitted) (citation omitted); *see also Mikulski*, 501 F.3d at 564 ("This circuit has recognized that complete preemption is a limited rule. . . . [W]e have declined to extend complete preemption to various statutes that lack [] explicit language.");[3] *Est. of Cowan v. LP Columbia KY, LLC*, 530 F. Supp. 3d 695, 702 (W.D. Ky. 2021) ("The Sixth Circuit has declined to extend complete preemption to various statutes that fail to confer original exclusive jurisdiction on the federal courts." (citing *Mikulski*, 501 F.3d at 564)).

---

[3] In *Mikulski*, the Sixth Circuit recognized that "[t]hus far, complete preemption has been limited to three classes of cases by the Supreme Court: Section 301 of the Labor Management Relations Act of 1947; the Employee Retirement Income Security Act of 1975; and the National Bank Act." *Wolford v. Bayer Corp.*, No. 7:16-227-KKC-HAI, 2017 WL 5665332, at *2 (E.D. Ky. Nov. 27, 2017) (citing *Mikulski*, 501 F.3d at 563-564). The Sixth Circuit has applied complete preemption to the Copyright Act and the National Flood Insurance Act. *See Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 758 (E.D. Ky. 2014) (citing *Ritchie v. Williams*, 395 F.3d 283, 286-87 (6th Cir. 2005); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949-50 (6th Cir. 2002)).

In relevant part, the FAAAA provides:

[N]o State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

49 U.S.C. § 14501(b)(1). The statute, however, also provides that the FAAAA's provisions "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ." *Id.* § 14501(c)(2)(A). As the Supreme Court has explained with regard to the exception in the FAAAA, "Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over [freight forwarded and brokers, and] motor carriers of property, *'not restrict' the preexisting and traditional state police power over safety.*" *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439 (2002) (emphasis added) (internal citation omitted).

The parties agree that the Sixth Circuit has not addressed whether the FAAAA would completely preempt White's claims in this case. In the absence of binding Sixth Circuit authority, the Court is most persuaded by a sister court's decision in *Moyer v. SimBad, LLC*, No. 2:20-CV-5405, 2021 WL 1215818 (S.D. Ohio. Jan. 12, 2021), *adopted by* 2021 WL 1209469 (S.D. Ohio Mar. 31, 2021). In *Moyer*, the plaintiffs sued a motor carrier and its driver for the wrongful death of a motorist killed during an accident. *See id*. at *1. The plaintiffs later amended the complaint to assert claims against another motor carrier. *See id*. The added motor carrier then removed the action to federal court based upon the supposed complete preemption of the plaintiffs' claims by the FAAAA. *See id*. The plaintiffs then moved to remand the case to state court. *See id*.

14

In granting the motion to remand, the court rejected the assertion that complete preemption provided a basis for removal. *See id*. at *3-6. While recognizing that the FAAAA does preempt certain state laws relating to motor carriers and brokers, the court noted "the FAAAA specifies certain matters that are *not* preempted (i.e., an exception to the exception), including the 'safety regulatory authority of a State with respect to motor vehicles.'" *Id*. at *4 (quoting 49 U.S.C. § 14501(c)(2)).

The court reasoned:

> [T]he FAAAA does not contain express language indicating that it was designed to completely preempt personal injury or wrongful death claims, and that in fact it appears to specifically remove at least some such claims from preemption in 49 U.S.C. 14501(c)(2)(A). To that end, the fact that the FAAAA essentially requires courts to closely analyze personal injury or wrongful death claims on a case-by-case basis, to determine whether they are subject to preemption, also supports the conclusion that Congress did not intend to, and did not, "completely override[] all state law on the topic." While some negligence-based claims may be saved from preemption by 49 U.S.C. § 14501(c)(2), some may not. This only means that the FAAAA is not a complete preemption statute.

*Id*. at *6 (alteration in original) (internal citations omitted). In determining that the plaintiffs' claims had not been preempted, the court reasoned:

> [The defendant] has failed to identify "clear congressional intent" for the FAAAA to engulf the entire area of personal injury and wrongful death claims involving transportation brokers and motor carriers, especially in light of the Supreme Court's declaration that 49 U.S.C. 14501(c)(1) "massively limits the scope of preemption ordered by the FAAAA."

*Id*. (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013)).[4] Accordingly, the court remanded the case to state court. *See Moyer v. SimBad LLC*, No. 2:20-CV-5405, 2021 WL 1209469, at *1 (S.D. Ohio Mar. 31, 2021).

---

[4] The court concluded that the motor carrier's assertion of preemption was an affirmative defense rather than a basis for removal. *See id*. White makes a similar argument in his motion. (Pl.'s Mem. Supp. Mot. Remand 4-8).

ACF Global's arguments fare no better than the removing defendant in *Moyer*. There are certainly cases that ACF Global can rely upon in asserting that removal was proper,[5] but like *Moyer*, this Court is more persuaded by the courts concluding that state law personal injury and wrongful death claims are not properly removed to federal court and then completely preempted by the FAAAA. ACF Global's arguments are more properly asserted in state court in support of an affirmative defense to White's claims.

For these reasons, complete preemption is not a basis for removal of this matter, and ACF Global has not shown that Congress has expressed a clear intent to preclude all personal injury and wrongful death claims asserted against transportation brokers and motor carriers. Because ACF Global has failed to meet its burden of establishing subject matter jurisdiction over this dispute and that removal was proper, White's motion to remand will be granted.

### 3. *Lack of Consent from All Defendants*

Plaintiff and ACF Global also disagree as to whether the consent of all Defendants was required for removal to federal court. (Pl.'s Mem. Supp. Mot. Remand 10; Def.'s Resp. Pl.'s Mot. Remand 10 n.5). In the absence of subject matter jurisdiction, however, it is unnecessary to address this issue.

---

[5] In its Notice of Removal, ACF Global specifically discussed a sister court's decision in *Creagan v. Wal-Mart Transportation, LLC*, 354 F. Supp. 3d 808 (N.D. Ohio 2018). (Notice Removal 5). As the court noted in *Moyer*, *Creagan* did not involve a case removed based upon complete preemption, like the case *sub judice*, and was not decided based upon complete preemption. *See Moyer*, 2021 WL 1215818, at *4-5. In addition, "while *Creagan* may have been an early trailblazer into this discrete legal issue, it appears to be firmly in the minority of the relevant case law." *Id*. at *5.

### B.     Defendant's Motion to Dismiss/Defendant's Motion for Leave to Amend

Because the Court lacks subject matter jurisdiction over this matter, it is also unnecessary to address the merits of ACF Global's motions. Accordingly, its motions will be denied as moot.

### III.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion to Remand (DN 10) is **GRANTED**, and this matter is remanded to Warren Circuit Court.

2. Defendant's Motion to Dismiss (DN 5) is **DENIED AS MOOT**.

3. Defendant's Motion for Leave to Amend (DN 14) is **DENIED AS MOOT**.

4. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

September 29, 2022

cc:     counsel of record
        Warren Circuit Court, Civil Action No. 21-CI-01340